UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CRAIG COUNTY,<br>*a political subdivision of the*<br>*Commonwealth of Virginia*,<br><br>                    Plaintiff,<br><br>            v.<br><br>ERIC H. HOLDER, JR.,<br>*Attorney General of the United States*, *et al.*<br><br>                    Defendants. | Civil Action No. 12-1179 (BAH-MG-PLF)<br><br>Three-Judge Court |

## CONSENT JUDGMENT AND DECREE

1.      The complaint in this action was filed on July 18, 2012, by the Plaintiff Craig County, Virginia ("Craig County" or "the County"), against the Defendant Attorney General of the United States and the Defendant Assistant Attorney General, Civil Rights Division (collectively the "Attorney General").  Craig County is a governmental entity organized under the Constitution and laws of the Commonwealth of Virginia.

2.      The Commonwealth of Virginia became covered as a whole by certain special provisions of the Voting Rights Act, based on a coverage determination made by the Attorney General and the Director of the Census, and published in the Federal Register on August 7, 1965. *See* 30 Fed. Reg. 9,897 (Aug. 7, 1965).  By virtue of this coverage determination, the Commonwealth of Virginia and all of its political subdivisions (including the County) must receive preclearance under Section 5 of the Voting Rights Act for all changes enacted or implemented after November 1, 1964, that affect voting**.**

3.      Through this action, the County seeks a declaratory judgment pursuant to the first sentence of the "bailout" provisions of Section 4(a)(1) of the Voting Rights Act, 42 U.S.C. § 1973b(a)(1), declaring it exempt from coverage under Section 4(b) of the Act, 42 U.S.C. 1973b(b).

Bailout also exempts the jurisdiction from being subject to the preclearance provisions of Section 5 of the Act, 42 U.S.C. § 1973c.

4. This three-judge District Court has been convened as provided in 42 U.S.C. § 1973b(a)(5) and 28 U.S.C. § 2284 and has jurisdiction over this matter.

5. This three-judge District Court has been convened as provided in 42 U.S.C. § 1973b(a)(5) and 28 U.S.C. § 2284 and has jurisdiction over this matter. Section 4(a) of the Voting Rights Act provides that a political subdivision subject to the special provisions of the Act may be exempted or "bailed out" from those provisions through an action for a declaratory judgment before this Court if it can demonstrate fulfillment of the specific statutory conditions in Section 4(a) for both the ten years preceding the filing of the action, and throughout the pendency of the action. The statutory conditions the County must satisfy are as follows:

> (A) no such test or device has been used within such State or political subdivision for the purpose or with the effect of denying or abridging the right to vote on account of race or color or (in the case of a State or subdivision seeking a declaratory judgment under the second sentence of this subsection) in contravention of the guarantees of subsection (f)(2) of this section (42 U.S.C. § 1973b(a)(1)(A));
>
> (B) no final judgment of any court of the United States, other than the denial of declaratory judgment under this section, has determined that denials or abridgements of the right to vote on account of race or color have occurred anywhere in the territory of such State or political subdivision or (in the case of a State or subdivision seeking a declaratory judgment under the second sentence of this subsection) that denials or abridgements of the right to vote in contravention of the guarantees of subsection (f)(2) of this section have occurred anywhere in the territory of such State or subdivision and no consent decree, settlement, or agreement has been entered into resulting in any abandonment of a voting practice challenged on such grounds; and no declaratory judgment under this section shall be entered during the pendency of an action commenced before the filing of an action under this section and alleging such denials or abridgements of the right to vote (42 U.S.C. § 1973b(a)(1)(B));
>
> (C) no Federal examiners or observers under subchapters I-A to I-C of this chapter have been assigned to such State or political subdivision (42 U.S.C. § 1973b(a)(1)(C));
>
> (D) such State or political subdivision and all governmental units within its territory have complied with section 1973c of this title, including compliance with the requirement that no change covered by section 1973c of this title has been enforced without preclearance under section 1973c of this title, and have repealed all changes

covered by section 1973c of this title to which the Attorney General has successfully objected or as to which the United States District Court for the District of Columbia has denied a declaratory judgment (42 U.S.C. § 1973b(a)(1)(D));

(E) the Attorney General has not interposed any objection (that has not been overturned by a final judgment of a court) and no declaratory judgment has been denied under section 1973c of this title, with respect to any submission by or on behalf of the plaintiff or any governmental unit within its territory under section 1973c of this title, and no such submissions or declaratory judgment actions are pending (42 U.S.C. § 1973b(a)(1)(E)); and

(F) such State or political subdivision and all governmental units within its territory-- (i) have eliminated voting procedures and methods of election which inhibit or dilute equal access to the electoral process; (ii) have engaged in constructive efforts to eliminate intimidation and harassment of persons exercising rights protected under subchapters I-A to I-C of this chapter; and (iii) have engaged in other constructive efforts, such as expanded opportunity for convenient registration and voting for every person of voting age and the appointment of minority persons as election officials throughout the jurisdiction and at all stages of the election and registration process. (42 U.S.C. § 1973b(a)(1)(F)(i-iii)).

6.      Section 4(a) also provides the following additional requirements to obtain bailout:

To assist the court in determining whether to issue a declaratory judgment under this subsection, the plaintiff shall present evidence of minority participation, including evidence of the levels of minority group registration and voting, changes in such levels over time, and disparities between minority-group and non-minority-group participation. (42 U.S.C. § 1973b(a)(2));

No declaratory judgment shall issue under this subsection with respect to such State or political subdivision if such plaintiff and governmental units within its territory have, during the period beginning ten years before the date the judgment is issued, engaged in violations of any provision of the Constitution or laws of the United States or any State or political subdivision with respect to discrimination in voting on account of race or color or (in the case of a State or subdivision seeking a declaratory judgment under the second sentence of this subsection) in contravention of the guarantees of subsection (f)(2) of this section unless the plaintiff establishes that any such violations were trivial, were promptly corrected, and were not repeated. (42 U.S.C. § 1973b(a)(3));

The State or political subdivision bringing such action shall publicize the intended commencement and any proposed settlement of such action in the media serving such State or political subdivision and in appropriate United States post offices. (42 U.S.C. § 1973b(a)(4)).

7.      Finally, Section 4(a)(9) provides that the Attorney General can consent to entry of a

declaratory judgment granting bailout "if based upon a showing of objective and compelling

3

evidence by the plaintiff, and upon investigation, he is satisfied that the State or political subdivision has complied with the requirements of [Section 4(a)(1)] . . . ."

8.  The Attorney General has conducted a comprehensive and independent investigation to determine the County's entitlement to bailout.  In so doing, he has, among other things, reviewed a significant number of documents related to the County, including available background information and demographic data, minutes of the Craig County Board of Supervisors and School Board meetings, minutes from the Town of New Castle Town Council meetings, records relating to voter registration and turnout in the County, and records of the County's preclearance submissions.

9.  The Attorney General and Craig County agree that the County has fulfilled the conditions required by Section 4(a) and is entitled to the requested declaratory judgment allowing it to bail out of Section 5 coverage.  Accordingly, the County and the Attorney General have filed a Joint Motion for Entry of this Consent Judgment and Decree.

## AGREED FACTUAL FINDINGS

10.  The County is a political subdivision of the Commonwealth of Virginia, and thus a political subdivision within the meaning of Section 4(a) of the Voting Rights Act.  *See* 42 U.S.C. 1973b(a)(1)(A); *see also Nw. Austin Mun. Util. Dist. No. One v. Holder*, 557 U.S. 193 (2009).  There are two other elected governmental units within the meaning of 42 U.S.C. §1973b(a)(1) that exist within Craig County:  the Craig County School District and the Town of New Castle ("the Town").

11.  The Craig County Board of Supervisors is the governing body that formulates policies for the administration of government in Craig County.  The Board is comprised of five members elected from single-member districts, who serve staggered four-year terms.

12.  The Craig County School Board is a five-member elected board whose terms of office and districts are the same as the Board of Supervisors.

4

13. Additionally, located within Craig County is the Town of New Castle. New Castle is governed by a five-member Town Council, which includes the Mayor. The Town Council and the Mayor are elected at-large to serve four-year terms.

14. The County became a jurisdiction subject to the special provisions of the Voting Rights Act on the basis of the determinations made by the Attorney General that Virginia maintained a "test or device" as defined by Section 4(b) of the Act, 42 U.S.C. § 1973b(b), on November 1, 1964, and by the Director of the Census that fewer than 50 percent of the persons of voting age residing in the Commonwealth voted in the 1964 presidential election.

15. According to the 2010 Census, Craig County's total population is 5,190, of whom 5,103 (98.3%) were non-Hispanic White; 10 (.2%) were non-Hispanic Black; 13 (.3%) were non-Hispanic American Indian or Alaska Native; 36 (.7%) were Hispanic; and the remainder of the population was split among other racial groups. Also, according to the 2010 Census, the County's total voting age population was 4,079, of whom 4,027 (99%) were non-Hispanic White; 3 (.1%) were non-Hispanic Black; 12 (.3%) were non-Hispanic American Indian or Alaska Native; 21 (.5%) were Hispanic, and the remainder of the voting age population was split among other racial groups.

16. The Town of New Castle has, according to the 2010 Census, a total population of 153, of whom 150 (98%) were non-Hispanic White; 2 (1.3%) were non-Hispanic American Indian or Alaska Native; and 1 (.6%) was non-Hispanic Asian. Also, according to the 2010 Census, the Town's total voting age population was 111, of whom 109 (98.2%) were non-Hispanic White; 1 (.9%) was non-Hispanic American Indian or Alaska Native; and 1 (.9%) was non-Hispanic Asian.

17. No African Americans or Hispanics have been elected to the County Board of Supervisors, the County School Board, or the Town Council.

18. No African Americans or Hispanics have served as members of the County Electoral Board, General Registrar, County Administrator, or as Town Manager.

19. The Craig County Electoral Board and Registrar are primarily responsible for all election-related functions, including voter registration, list maintenance, voter outreach, conduct of elections, and the selection of polling sites and election officials in the County.

20. Citizens in Craig County can register to vote at the office of the Craig County General Registrar, which is located in the Town of New Castle. Voter registration opportunities are available at the Craig County Department of Health, the Craig County Department of Social Services, and regional offices of various agencies, including the Department of Aging and Rehabilitative Services, the Department of Behavioral Health and Developmental Services, the Department for the Blind and Vision Impaired, the Department of Deaf and Hard of Hearing, the Virginia Office for Protection and Advocacy, the Department of Game and Inland Fisheries, the Department of Motor Vehicles, Disabilities Support Services Offices, Armed Forces Recruitment Offices, and through mail-in application.

21. Since the County, like other jurisdictions in Virginia, does not record the race of its registered voters, it cannot present evidence of minority participation in registering and voting. Current data show, however, that in November 2010, 3,802 individuals, or 93.2% of the County's voting age population, were registered to vote in Craig County. Over the last decade, the number of registered voters increased by 426, from 3,376 to 3,802 individuals.

22. Craig County uses a total of 11 polling sites; there is also a Central Absentee Voting precinct. Two districts that have only one precinct have one polling location, and the other districts have at least two polling locations.

23. Despite the County's efforts to recruit minority poll workers, there have been none in the last decade. The Electoral Board has not turned away any person who applies to be a poll worker.

24. Voter turnout in elections in Craig County varies according to the offices up for election. In the last three Presidential elections, voter turnout was 74.7% in 2000; 73.3% in 2004;

and 72.7% in 2008. In the last three statewide elections for Governor, turnout was 53.9% in 2001, 50% in 2005, and 43.4% in 2009.

25. Since 2002, there have been 13 submissions made on behalf of Craig County under Section 5 of the Voting Rights Act to the Attorney General. The Attorney General did not interpose any objection to any of the submitted voting changes. Neither the County, nor any of the governmental units within the county, have sought judicial preclearance under Section 5 for any voting changes in the District Court for the District of Columbia.

26. Since 2002, there have been three Section 5 submissions made on behalf of the Craig County School Board. The Attorney General did not interpose any objection to any of the submitted voting changes.

27. Since 2002, there have been two Section 5 submissions made on behalf of the Town of New Castle. The Attorney General did not interpose any objection to any of the submitted voting changes.

28. The County publicized its intent to seek a bailout in the *Galax Gazette* on December 17, 2010 and the *Craig County News* on December 29, 2010. *See* 42 U.S.C. § 1973b(a)(4). The County also sent a notice of its intent to seek a bailout to post offices throughout the County and various County offices with a request that it be posted on public boards.

29. The Attorney General has determined that it is appropriate to consent to a declaratory judgment allowing bailout by the County, pursuant to Section 4(a)(9) of the Voting Rights Act. The Attorney General's consent in this action is based upon his own independent factual investigation of the County's fulfillment of all of the bailout criteria, and consideration of all of the circumstances of this case, and the absence of racial discrimination in the electoral process within the County. This consent is premised on an understanding that Congress intended Section 4(a)(9) to permit bailout in those cases where the Attorney General is satisfied that the statutory objectives of encouraging

Section 5 compliance, and preventing the use of racially discriminatory voting practices, would not be compromised by such consent.

30. The parties request that this Court wait 30 days after filing of the Joint Motion for Entry of this Consent Judgment and Decree, before approving this settlement, while a notice of proposed settlement is advertised.

## AGREED FINDINGS ON STATUTORY BAILOUT CRITERIA

31. Craig County, the Craig County School District, and the Town of New Castle are covered jurisdictions subject to the special provisions of the Voting Rights Act, including Section 5 of the Act, 42 U.S.C. § 1973c. Under Section 5 of the Act, these jurisdictions are required to obtain preclearance under Section 5 from either this Court or from the Attorney General for any change in voting standards, practices, and procedures adopted or implemented since the Act's coverage date for the Commonwealth of Virginia.

32. During the ten years preceding the filing of this action and during the pendency of this action, there has been no test or device as defined in Section 4(c) of the Voting Rights Act used within the County for the purpose or with the effect of denying or abridging the right to vote on account of race or color. During the relevant time period there is also no indication that any person in Craig County has been denied the right to vote on account of race or color. *See* 42 U.S.C. § 1973b(a)(1)(A).

33. During the ten years preceding the filing of this action, and during the pendency of this action, no final judgment of any court of the United States has determined that denials or abridgments of the right to vote on account of race or color have occurred anywhere within the County. Further, no consent decree, settlement, or agreement has been entered into resulting in any abandonment of a voting practice challenged on such grounds. No action is presently pending alleging such denials or abridgements of the right to vote. *See* 42 U.S.C. § 1973b(a)(1)(B).

34. During the ten years preceding the filing of this action, and during the pendency of this action, no Federal examiners or observers have been assigned to Craig County. *See* 42 U.S.C. § 1973b(a)(1)(C).

35. The County, School District, and Town have submitted a number of voting changes to the Attorney General for review under Section 5. The Attorney General has not interposed an objection under Section 5 to any of these changes. *See* 42 U.S.C. § 1973b.

36. During the 10 years preceding the filing of this action, and during the pendency of this action, the County, School District, and Town have complied with Section 5, and there has been no need for the County, School District, or Town to repeal any voting changes to which the Attorney General has objected, or to which this Court has denied a declaratory judgment, since no such objection or denials have occurred. *See* 42 U.S.C. § 1973b(a)(1)(D).

37. The Attorney General has never interposed any objection to voting changes submitted by or on behalf of the County, County School District, or Town for administrative review under Section 5. No such administrative submissions by or on behalf of the County, School District, or Town are presently pending before the Attorney General. Neither the County, School District, nor Town have ever sought judicial preclearance from this Court under Section 5. Thus, this Court has never denied the County, School District, or Town a declaratory judgment under Section 5, nor are any such declaratory judgment actions now pending. *See* 42 U.S.C. § 1973b(a)(1)(E).

38. During the 10 years preceding the filing of this action, and during the pendency of this action, neither the County, School District, nor Town have employed voting procedures or methods of election which inhibit or dilute equal access to the electoral process. *See* 42 U.S.C. § 1973b(a)(1)(F)(i).

39. There is no evidence that any persons in the County's, School District's, or Town's elections have been subject to intimidation or harassment in the course of exercising their rights protected under the Voting Rights Act. *See* 42 U.S.C. § 1973b(a)(1)(F)(ii).

40. Over the years, the County has engaged in constructive efforts to expand the opportunity for voting for every person of voting age through a variety of ways, including offering various locations for voter registration in the County. *See* 42 U.S.C. § 1973b(a)(1)(F)(iii).

41. The County has presented available evidence concerning rates of voter registration and voter participation over time. *See* 42 U.S.C. § 1973b(a)(2).

42. During the preceding 10 year period, neither the County, the School District, nor the Town have engaged in violations of any provision of the Constitution or laws of the United States or any State or political subdivision with respect to discrimination in voting on account of race or color. *See* 42 U.S.C. § 1973b(a)(3).

43. On June 20, 2012 in the *New Castle Record,* the County published notice announcing the intended commencement of this action prior to its being filed on July 18, 2012.

44. The County has also publicized a notice of the proposed settlement of this action, simultaneously with the filing of the Joint Motion for Entry of Consent Judgment and Decree. *See* 42 U.S.C. § 1973b(a)(4).

Accordingly, it is hereby

**ORDERED, ADJUDGED, and DECREED** that the Plaintiff, Craig County, is entitled to a declaratory judgment in accordance with Section 4(a)(1) of the Voting Rights Act, 42 U.S.C. § 1973b(a)(1); and it is further

**ORDERED** that the parties' Joint Motion for Entry of Consent Judgment and Decree, ECF No. 14, is GRANTED, and Craig County, the Craig County School District and the Town of New Castle are exempted from coverage pursuant to Section 4(b) of the Voting Rights Act, *see* 42 U.S.C. § 1973b(b), provided that this Court shall retain jurisdiction over this matter for a period of ten years pursuant to Section 4(a)(5), *see* 42 U.S.C. § 1973b(a)(5). This action shall be closed and placed on this Court's inactive docket, subject to being reactivated upon

application by either the Attorney General or any aggrieved person in accordance with the procedures set forth in Section 4(a)(5), *see* 42 U.S.C. § 1973b(a)(5); and it is further

**ORDERED** that each party shall bear its own fees, expenses and costs.

**SO ORDERED.**

Date:  November 29, 2012

                                              /s/
 BERYL A. HOWELL
UNITED STATES DISTRICT JUDGE

                                              /s/
MERRICK GARLAND
UNITED STATES CIRCUIT JUDGE

                                              /s/
PAUL L. FRIEDMAN
UNITED STATES DISTRICT JUDGE